## Jesse Fread v. The State.

### No. 5122. Decided March 26, 1919.

**1.—Murder—Charge of Court—Defense of Property.**

Where, upon trial of murder, the evidence showed that the defendant committed the homicide while the deceased was in the act of taking his corn at night, the court's charge that the defendant would not be justified if he killed deceased in pursuance of a previously formed design and not to prevent the theft of the corn, was reversible error, as the law does not require that the defendant be free of ill-will under such circumstances. ·

**2.—Same—Charge of Court—Former Thefts.**

Where, upon trial of murder, the evidence showed that the homicide occurred while deceased was attempting to steal defendant's property in the night-time, the charge of the court that former thefts by deceased would not justify the homicide was error.

**3.—Same—Right of Arrest—Charge of Court—Self-defense.**

Where, upon trial of murder, the evidence showed that the homicide occurred while deceased was attempting to steal defendant's property and that defendant had him under arrest, when deceased called for a gun which his wife brought, when defendant shot him, the court should have submitted a charge with reference to defendant's right to arrest the deceased under the circumstances.

**4.—Same—Self-defense—Defendant's Standpoint.**

Where, upon trial of murder, the evidence showed that the deceased was about to secure the gun which his wife had brought him, and the presumption would be that he intended to kill or inflict upon defendant serious bodily injury, the court should have given a specific charge on this phase of the evidence.

**5.—Same—Evidence—Circumstance.**

Where, upon trial of murder, the evidence showed that deceased was caught in the act of stealing defendant's corn from his crib in the night-time, when the homicide occurred, the defendant should have been permitted to show that the deceased had been in the habit of stealing defendant's corn to feed his hogs and mules shortly prior to the homicide.

**6.—Same—Evidence—Impeaching Witness.**

Where, upon trial of murder, the wife of the deceased was impeached by defendant's witness in accordance with predicates laid for such impeachment, she should not have been permitted to again take the stand and reiterate her former testimony.

Appeal from the District Court of Navarro. Tried below before the Hon. J. B. Davis, judge.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Hawkins Scarborough* and *Richard Mays* for appellant.—On question of homicide in defense of property: Whitten v. State, 29

Texas Crim. App., 504; Hassell v. State, 80 Texas Crim. Rep., 93, 188 S. W. Rep., 991; Joy v. State, 57 Texas Crim. Rep., 93, 123 S. W. Rep., 584; Newman v. State, 58 Texas Crim. Rep., 443, 126 S. W. Rep., 578.

On question of arrest of deceased: English v. State, 30 S. W. Rep., 233; Perez v. State, 16 id., 750; Smith v. State, 13 Texas Crim. App., 507.

On question of evidence of wife of deceased: Blake v. State, 81 Texas Crim. Rep., 87, 193 S. W. Rep., 1064; McDougal v. State, 81 Texas Crim. Rep., 179, 194 S. W. Rep., 944.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder, his punishment being assessed at five years in the penitentiary.

He shot and killed Hal Phillips. Deceased married the widow of appellant's deceased brother about three months after his death, and had been married four or five months at the time of the homicide. Trouble arose between deceased and appellant. On one occasion a personal difficulty ensued. This resulted in the discomfiture of appellant in the fight. These troubles grew mainly out of the fact that deceased was appropriating the corn belonging to appellant. Appellant complained to the officers, who advised him to watch his corn crib, and take some one with him. In accordance with these directions he, on the night of the homicide, took his brother and went to the crib. They secreted themselves in appellant's part of the crib, the house being divided by a partition wall separating appellant's part of the structure from that used by deceased. These rooms were used for storing corn. Late at night and towards the early morning the deceased came from his house, about one hundred yards away, entered his portion of the crib, and thence over the partition wall into the end of the crib where appellant's corn was stored. While deceased was securing appellant's corn he challenged and held deceased in custody, sending his brother to phone the officers to come. Immediately after his departure deceased undertook to leave the crib. As he was getting out of the house, or just on the outside, he was shot by appellant. At the time deceased was arrested by appellant and before emerging from the crib, he called to his wife to bring his gun. She brought it. It was a double-barrel shot-gun, both barrels being loaded. Appellant was undertaking to hold the deceased under arrest, and both, it seems, got outside of the house. When the wife reached her husband with the gun, or within a few feet of him, over protest she kept approaching, whereupon appellant shot. In a struggle between deceased's wife and appellant he succeeded in getting the gun. There is evidence that deceased had been taking and using defendant's corn for sometime feeding his hogs and

mules.   There seems to be no particular issue as to the fact that
deceased was using appellant's corn, which was discoverable from
the fact that deceased's corn was white, whereas appellant's was what
they called "strawberry color."  Corn of the kind that appellant
raised was found in the trough out at the place where deceased fed
his stock.   The deceased's crop amounted to about thirty-five
bushels, and he had been feeding his stock for some months.   His
corn had not diminished in proportion to the amount of corn he
is supposed to have used.   Without further detailing the facts, this
is a sufficient statement to bring in review some of the questions
presented for revision.

Homicide under Article 1105 P. C. is justified where it is com-
mitted upon the person who takes the property of the slayer at
night while at the place of the making, or within gun-shot range
of said place.   This is made justifiable homicide upon the theory
of self-defense, and is statutory.   Where the facts bring it with-
in the purview of this statute, the slayer is not criminally liable.
See Branch's Ann. P. C., Art. 1105, and authorities cited under
this statute.

Exceptions to the charge were timely urged, and requested
instructions asked but refused covering some of the phases of the
case.  The court in a general way charged the statute, but he
qualified it by instructing the jury that if defendant killed de-
ceased in pursuance of and in execution of a previously formed
design to kill and not to prevent the theft of the corn then being
committed, such killing would not be justified, though done in the
nighttime and while deceased was stealing defendant's corn.   This
charge should not have been given. If deceased was stealing the corn,
or attempting to do so, appellant was justified in the killing.   The
law under such circumstances justifies the homicide, and it is not
a question of previous ill-will but one of legal right or justi-
fication.   The law of self-defense is not to be abridged by such ill-
will where deceased places himself outside the law and becomes the
wrongdoer.   Malice may exist in the mind of the slayer, but it does
not debar him the right of self-defense if the causes exist which
bring him within the terms of the law of self-defense.   He may de-
sire to slay, but if the deceased attacks wrongfully, and so as to
bring about the act of defendant in self-defense, he is entitled to
legal protection for the homicide; and this is true, generally speak-
ing. whether it is done under this or any statute with reference to
self-defense which justifies or exonerates from criminality.   This
underlying proposition pervades all of our laws and jurisprudence
with reference to self-defense.   The statute relieves the slayer of
criminal responsibility when he slays him who at night steals his
property, and is at the place of the theft, or within gun-shot
range of it.   It does not require that he be free of ill-will in order
to justify such act under the statute.   In such event the de-

ceased places himself outside the law as much as if he was making an unlawful attack threatening the life of the slayer. The slayer under such circumstances is within the law, and protected by it.

In this connection the court also charged that former thefts by deceased would not justify the homicide. This rather · emphasizes the error in the charge already mentioned. It had the effect, or could legally impress the jury with the idea that the killing may have occurred because deceased had been stealing appellant's corn prior to the time of the homicide, and not on the occasion of the killing, and for this reason he fired the fatal shot. If deceased was not taking, or attempting to take, appellant's property at the time of the killing, appellant was not justified, and could not avail himself of self-defense. If he was within the terms of the statute. it would not matter as to the condition of his mind or purpose from the former thefts. His right to act would be based upon circumstances upon which he did act. The idea underlies the court's charge that previous malice would defeat self-defense, though he shot deceased in self-defense. Deceased was under arrest, and was seeking to relieve himself by calling for his gun. There was no contention that the arrest was for past thefts. It was for the present theft. It is well settled that as between prior causes and that occurring at the time of the difficulty, the latter will be looked to rather than the former. Former thefts, it is true, became a part of the case as shown by appellant's complaint to the officers and his presence in the corn crib at the time of the trouble. It was the inducing cause for his presence in his crib. The former thefts, however, would not deprive him of acting as he did at the time he did act in regard to the then occurring theft. His act would be attributed to the theft at the time of the killing rather than to former thefts. The court should not have charged the jury with reference to former thefts as a basis for motive or malice. It was a charge also on the weight of the evidence. If a charge was thought necessary to be given in this connection, the jury should have been charged that they should look to the present cause and not those which had previosly occurred.

Exception was reserved to the charge because of its failure to instruct the jury with reference to appellant's right to arrest deceased under the circumstances mentioned. The court did not so charge. Appellant requested a special instruction to this effect but it was refused. Appellant contends that this error is magnified by reason of the fact that the State contended in argument before the jury that appellant was the wrongdoer in having deceased illegally under arrest; that he had no legal authority to arrest him. Appellant had the right to make the arrest. This is authorized by statute. See Arts. 259-263 C. C. P. Under the terms of those statutes a citizen may arrest where there is a felony or breach of the peace being committed in his presence. To this end he is clothed

with the same authority as is an officer to make such arrest. Alford v. State, 8 Texas Crim. App., 545. We are of opinion that the court should have given the charge with reference to the authority of appellant to make the arrest under the facts. If appellant had no authority to make the arrest, the arrest was illegal, and the deceased was restrained of his liberty in violation of law. If he had the right to arrest, the deceased was legally held. Appellant was trying to hold him until he could bring the officers, and had sent his brother for the purpose of securing their presence. The deceased called for his shotgun. His wife had brought it, and was within a few feet of him. This would further place deceased in the wrong.

Another question is suggested from the standpoint of self-defense. Appellant had the right, when the wife came with the shotgun, to prevent the deceased from securing and using it. He had had a previous difficulty with deceased in which he had been beaten by deceased with brass knucks. His wife was within a few feet of him with the shotgun brought by his command with the evident purpose of using it. The court charged in a general way with reference to the law of self-defense as to this phase of the case as he did on threats. The issue of threats was raised by the testimony. Upon another trial the court should be more specific with reference to the charge on self-defense from this view point. The court should also charge as contended by appellant, that if deceased was about to secure the gun, the presumption would be that he intended to kill or inflict upon appellant serious bodily injury. These matters are treated in a general way without specifically discussing each question suggested for revision by the exceptions to the charge, and special requested instructions refused. The court will understand upon what theory this case should be tried upon these issues.

A bill of exceptions was reserved to the refusal of the court to permit defendant to prove: "That the deceased had two hogs and a pair of mules, and that they were fat and in good condition at and for some time prior to the killing. That after the deceased married the widow of his (appellant's) deceased brother, they gathered and housed from Mrs. Fread's crop, during the year 1915, not exceeding thirty-five bushels. That during the fall of 1915, and after said corn had matured, the deceased fed out of said corn said hogs and mules, and at the time of the killing had on hand as much as ten bushels." The court qualifies this by stating that a perusal of appellant's testimony discloses that he testified to the number of hogs and number of mules owned by deceased Phillips and his wife. Upon another trial, if the testimony is offered, the defendant should be permitted to show these conditions, and that deceased did not have a sufficient amount of corn to have fed his stock for the length of time that he did and keep them in the condition they were and have still remaining the

number of bushels mentioned. This would tend to show that deceased was stealing the corn of appellant. This whole case revolved around the fact that deceased was stealing appellant's corn and led to his being caught in the act the night of the tragedy.

Another bill of exceptions recites the fact that while the widow of deceased Phillips was testifying several predicates were laid for her impeachment, and that she was impeached in accordance with those predicates. After the witnesses had so testified she was again placed upon the stand by the State and permitted, over objection, to reiterate her form testimony. It was but a reiteration of what she had previously testified. Upon another trial this should not occur. A witness may be cross-examined and impeached upon proper predicate. The matter should rest at that point. The impeached witness should not be again permitted to reiterate her former testimony. If the State could have the witness reiterate her testimony, the defendant would have the right to recall his witnesses and have them reiterate their impeaching evidence. The law does not justify this character of proceeding. The assertion of the facts upon one side, and a denial upon the other, leaves the testimony before the jury for their decision as to the weight to be given it.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*